UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORREST HAIRSTON,

          Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.
                                              /

Case No. 11-10293

District Judge Gerald E. Rosen

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Forrest Hairston brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. #10] be GRANTED and Plaintiff's Motion for Summary Judgment [Doc. #9] DENIED.

**PROCEDURAL HISTORY**

Plaintiff applied for Disability Insurance Benefits ("DIB") on August 1, 2007, alleging disability as of January 5, 2007 (Tr. 78). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held in Falls Church, Virginia on November 9, 2009 before Administrative Law Judge ("ALJ") Elliot Bunce (Tr. 25). Plaintiff, represented by

-1-

attorney Mikel Lupisella, testified (Tr. 29-38), as did Vocational Expert ("VE") Anne Trimbley (Tr. 38-41). On November 13, 2009, ALJ Bunce found that Plaintiff was not disabled (Tr. 20). On November 20, 2010, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on January 24, 2011.

## BACKGROUND FACTS

Plaintiff, born June 30, 1966, was 43 when the ALJ issued his decision (Tr. 20, 78). He graduated from high school and worked previously as an assembler and restaurant manager (Tr. 89, 92). He alleges disability as a result of bilateral Carpal Tunnel Syndrome ("CTS") and hypertension (Tr. 88).

**A. Plaintiff's Testimony**

Plaintiff testified that he currently lived in a single family home in Mt. Morris, Michigan with his wife and three daughters (Tr. 30). He reported that he returned to work in August, 2009, taking a job as a sorter and inspector in a stamping plant, and currently worked 32 to 40 hours per week (Tr. 31). Plaintiff indicated that he did not work from the end of December, 2006 until August, 2009 (Tr. 31-32). He stated that before his job ended in December, 2006, he worked as an automotive assembler (Tr. 32).

Plaintiff testified that his household chores were limited to cutting the front lawn and light maintenance and light housework (Tr. 32-33). He reported undergoing carpal tunnel surgery on the left in 2006 and the same surgery on the right in 2007 (Tr. 33). Plaintiff indicated that he continued to experience numbness, tingling, and difficulty grasping with his left hand (Tr. 33). He reported limited numbness in his right hand, but acknowledged that

the right hand was stronger than the left (Tr. 34). Plaintiff stated that he had not told his current employer that he had CTS (Tr. 34). He testified that he coped with hand problems by taking over-the-counter anti-inflammatory medicine (Tr. 34). He estimated that he was unable to lift or carry more than five to six pounds with his left arm but that he was able to use his right side for lifting and grasping (Tr. 35).

In response to questioning by his attorney, Plaintiff reported that vibrations from the lawnmower limited his grass cutting to 30 to 45 minutes (Tr. 35). He alleged that severe hand pain prevented him from sleeping well, requiring him to take daytime naps (Tr. 35-36).

### B. Medical Records

#### 1. Treating Sources

In November, 2005, an EMG showed "moderate to severe" CTS on the left (Tr. 204). The same month, Panka N. Vakharia, M.D. found that left hand CTS limited Plaintiff to sedentary work (Tr. 209). In March, 2006, a nerve conduction study found the presence of bilateral CTS (Tr. 199-200). Plaintiff described his right-sided symptoms of CTS as "very mild" (Tr. 199). He underwent a left carpal tunnel release in August, 2006 (Tr. 158, 193). Examination notes from the following month state that the incision had fully healed (Tr. 154, 193). He was given a wrist splint and prescribed home exercises (Tr. 193). In October, 2006, Plaintiff reported that he no longer experienced nighttime hand numbness (Tr. 192). In December, 2006, Plaintiff noted that left-side symptoms worsened when he returned to work, also noting that he experienced increasing problems on the right (Tr. 188). In February, 2007, Plaintiff's work restrictions consisted of "no vibratory tools [in] either hand" (Tr. 173).

In April, 2007, Plaintiff reported continued left hand numbness and pain (Tr. 213). A June, 2007 EMG showed post-surgery improvement on the left, but some degree of CTS (Tr. 217). In August, 2007, Plaintiff was advised to undergo a right carpal tunnel release (Tr. 218).

### 2. Consultive and Non-Examining Sources

In November, 2007, J. L. Tofaute, M.D. examined Plaintiff on behalf of the SSA (Tr. 219-220). Plaintiff reported continued left hand symptoms despite a carpal tunnel release the previous year (Tr. 219). He noted that his condition was partially attributable to a left wrist injury at the age of 13 (Tr. 219). He stated that he was independent in self-care activities but avoided driving (Tr. 220). He demonstrated "good facility" in both hands with "moderately strong" grip strength in both hands (Tr. 220). A Phalen's wrist flexion test and Tinel's sign were positive on the left[1] (Tr. 220). The physical examination was otherwise unremarkable (Tr. 219-220).

The following month, a non-examining Physical Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift 50 pounds occasionally and 10 pounds frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 227). Plaintiff's ability to push and pull in the upper extremities was deemed limited by CTS (Tr. 227-228).

---

[1] "As part of the neurological exam, the doctor may tap at the base of the crease of the wrist. If this tapping brings on tingling in all the fingers except the pinkie, it is said that the Tinel's sign was positive." http://www.surgeryencyclopedia.com/A-Ce/Carpal-Tunnel-Release.html. "A positive Phalen test occurs when the two hands are placed back-to-back and held in that position for 60 seconds, bringing on symptoms." *Id.*

He was limited to frequent (as opposed to *constant*) handling and fingering and precluded from even moderate exposure to vibrating tools (Tr. 229-230).

### C. VE Testimony

VE Trimbley classified Plaintiff's former work as an automotive assembler as skilled at the medium exertional level; supervisory position as skilled/light; and his current position as unskilled/"light to medium" (Tr. 40). The ALJ then posed the following hypothetical question:

> Let me ask you to consider an individual of the claimant's age, education, and work history who's able to perform work at the light exertional level that does not require more than occasional grasping or handling. Would there be any unskilled entry level occupations that this person could perform and, if so, would you tell us what they are?

(Tr. 40). The VE found that based on the hypothetical limitations, the individual could perform the work of a counter clerk (4,900 positions in the local economy) and security guard (4,200) (Tr. 41). She stated that her testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 41).

In response to questioning by Plaintiff's attorney, the VE testified that if the same individual were limited by the need to take unscheduled naps as a result of "fatigue or pain," all gainful employment would be precluded (Tr. 41).

### D. The ALJ's Decision

The ALJ found first that Plaintiff did not engage in substantial gainful activity ("SGA") from January 5, 2007 through July 31, 2009, but found the presence of SGA from August 1,

2009 forward (Tr. 17). Next, citing Plaintiff's medical records, the ALJ found that from January 5, 2007 through July 31, 2009, Plaintiff experienced the severe impairment of CTS but that the condition did not meet or equal any impairment listed in Appendix 1, Subpart P, Regulations No.4 (Tr. 17-18). The ALJ found that for the same period, Plaintiff retained the Residual Functional Capacity ("RFC") for "work that does not require[] exertion above the light level . . . or more than occasional grasping and handling" (Tr. 18). He found that during that period, Plaintiff was capable of performing his "past relevant work" in the form of his current position as a sorter and inspector (Tr. 19). In the alternative, the ALJ made a step five determination, finding that Plaintiff could perform "other work" as a counter clerk and security guard, citing the VE's job numbers for these positions (Tr. 19-20).

The ALJ supported his Step Four finding that Plaintiff was capable of performing his current job from January 5, 2007 through July 31, 2009 by noting that although Plaintiff "testified that it is difficult for him to perform the work . . . the fact remains that he is performing it, adhering to a schedule set by his employer" (Tr. 19). He found Plaintiff's allegations of disability for the period in question "not fully credible," observing that Plaintiff was currently able to work within the above-stated RFC (Tr. 18). He also cited the November, 2007 consultive exam notes stating that Plaintiff exhibited good facility in both hands and "a reasonably strong grip" (Tr. 18).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether

it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe

impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff argues that the ALJ erred by rejecting his allegations of disability for the period in question. *Plaintiff's Brief* at 6-11. He contends, in effect, that the erroneous credibility determination led to the omission of key impairments from the hypothetical question posed to the VE, thus invalidating the job findings. *Id.* at 9. As such, he contends that the Step Five job findings are not supported by substantial evidence. *Id.* Citing SSR 82-62, he also contends that the Step Four finding he could return to his "past relevant work" was not well explained by the ALJ. *Id.* at 8 (citing SSR 82-62).

### A. The Credibility Determination and Hypothetical Question

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Because the ALJ

acknowledged the diagnosis of CTS and Plaintiff's treatment for the condition, the first prong of SSR 96-7p has been met (Tr. 17-18).

Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating in making the determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

In this case, the ALJ's credibility determination is well explained and well supported. He observed as follows:

> [Plaintiff] has now been working for over three months at the SGA level, adhering to a work schedule set by his employer, doing a job classified by the vocational expert as an assembler, requiring light-to-medium exertion. . . . [T]he job clearly requires the capacity specified in the RFC adopted here and more so.

Further, the ALJ cited November, 2007 consultive examination notes stating that Plaintiff exhibited "good facility with both hands and a reasonably strong grip" (Tr. 18 citing 220). Finally, he noted that Plaintiff admitted that he "returned to work due to financial necessity and not medical improvement," reasonably finding that his return to work when required

-9-

only by financial need supported the conclusion that he was also capable of working *before* August 1, 2009 (Tr. 18). Because the ALJ's adhered to the procedural and substantive requirements of SSR 96-7p, the deference generally allotted to the administrative credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).

As to the hypothetical question, the ALJ's choice of hypothetical limitations does not invalidate the step five conclusion that Plaintiff was capable of a significant range of work. In limiting the hypothetical to exertionally light work, the ALJ imposed more restrictive limitations than those found in a December, 2007 Physical Residual Functional Capacity Assessment (Tr. 227).[2] Moreover, none of the treating or consultive findings supports a finding of greater long-term limitations than those found in the hypothetical question. While Plaintiff claims a greater degree of limitation than that found in the hypothetical question, the ALJ was under no obligation to credit allegations unsupported by the record. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994) (*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987)).

### B. The Step Four Conclusion

The ALJ's Step Four finding that Plaintiff was capable of performing his current job from January 5, 2007 through July 31, 2009 is a closer call. At Step Four, a three-prong test must be met in order to find that a claimant can return to his past relevant work: "(1) a

---

[2] The December, 2007 Assessment found that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, with limitations on pushing and pulling (Tr. 227). This constitutes a "medium" level of exertion. 20 C.F.R. § 404.1567(c).

finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82-62.

The ALJ's Step Four finding that Plaintiff was previously able to work at a job he was currently performing might seem obvious. However, the VE's testimony that the current job was performed at the "light to medium" level of exertion exceeds the RFC found in the administrative opinion, which stated that Plaintiff was limited to light work (Tr. 18, 40).

Thus, under the third prong of SSR 82-62, the ALJ's finding that the RFC allowed Plaintiff to perform his *current* job was erroneous as applied to his previous work. *See* SSR 82-62, *above.*

However, the error at step four was harmless. The ALJ also made an independent step five finding, discussed above, that Plaintiff was capable of other work. The job findings the ALJ adopted at step five were counter clerk and security guard. Both of these positions are within the Plaintiff's RFC. Thus, remand on the basis of the step four analysis would not change the finding that he was not disabled.

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's discomfort or limitations based on ongoing CTS. I also agree with the ALJ's finding that Plaintiff's return to the workplace is "commendable" (Tr. 18). However, based on a review of this record as a whole, the finding that Plaintiff was not disabled from January 5, 2007 through July 31, 2009 was well within the "zone of

-11-

choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #10] be GRANTED and Plaintiff's Motion for Summary Judgment [Doc. #9] DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                            s/ R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE

Date: January 25, 2012

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 25, 2012.

                                            s/Johnetta M. Curry-Williams
                                            Case Manager